UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUNNY LEE-FANNING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-878-G |
| | ) |
| ELAINE L. CHAO, Secretary of | ) |
| Transportation, FAA, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter comes before the Court on Defendant Secretary's Motion for Summary Judgment (Doc. No. 37). Plaintiff has responded in opposition to the Motion (Doc. No. 41), and Defendant has replied (Doc. No. 42). Based on the case record, the parties' arguments, and the governing law, Defendant's Motion should be granted.

BACKGROUND

Plaintiff Sunny Lee-Fanning, an African-American/Asian woman, brings this action against the United States Secretary of Transportation, alleging that the Federal Aviation Administration ("FAA") engaged in racial discrimination in failing to promote Plaintiff and thereby violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Specifically, Plaintiff alleges that her former supervisor Michelle Coppedge elected to hire a Caucasian female rather than Plaintiff for the open position of Deputy Director based on Plaintiff's race. In her Motion, Defendant argues that summary judgment is appropriate because (1) the FAA had a legitimate, nondiscriminatory reason for not promoting

Plaintiff, and (2) Plaintiff has failed to present evidence sufficient to establish that the FAA's reason was pretextual.

STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quoting Fed. R. Civ. P. 56(e)). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information,

> affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
>
> - demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

## UNDISPUTED FACTS

Plaintiff has been employed with the FAA for around thirty years.[1] In 2011, Plaintiff was promoted to the executive position of Superintendent, ES-2, at the Mike Monroney Aeronautical Center ("MMAC"), a centralized service and support facility for the FAA and Department of Transportation. Def.'s Mot. at 9-10.[2] In July 2013, the FAA posted a vacancy announcement for the MMAC's Deputy Director position. *Id.* at 10. Plaintiff, who had previously served as Acting Deputy Director for a six-month period, applied. *Id.* at 7. Michelle Coppedge, Plaintiff's supervisor and Director of the MMAC, was the selecting official for the position. *Id.* at 10.

---

[1] All material facts relied upon in this Order are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff.

[2] Citations to documents electronically filed in this Court use the CM/ECF pagination.

The hiring process for the Deputy Director position had five steps. *Id.* The process began with FAA Human Resources, which reviewed all the applications to determine which applicants met the minimum qualifications. *Id.* Of the 91 applications received, FAA Human Resources identified 26 applicants who met the qualifications and referred these applicants to a Ratings Panel composed of three FAA executives. *Id.* at 12. The Ratings Panel then reviewed the 26 applications and scored them based on the Deputy Director position requirements. *Id.* at 10-11. The panel awarded the highest score to Ms. Robyn Burk and the second-highest score to Plaintiff. *Id.* at 13. The Ratings Panel then referred the top ten applicants to an Interview Panel, also composed of three FAA executives. *Id.* at 13. The Interview Panel interviewed seven of these candidates, including Plaintiff. *Id.* at 14-15. The panel asked each candidate the same interview questions, which had been developed in part by Coppedge. *Id.* at 14. The Interview Panel ranked each candidate's responses to the questions based on how well they corresponded to a key of model responses. *Id.* at 14-15. The panel members then provided qualitative feedback to Coppedge regarding the relative strengths and weaknesses of each of the seven remaining candidates. *Id.* at 15.

As the fourth step in the selection process, Coppedge selected and interviewed two candidates from the pool of seven.[3] *Id.* at 15-16. Robyn Burk was among these two candidates, but Plaintiff was not. *Id.* Following these second-round interviews, Coppedge

---

[3] The parties dispute whether the Interview Panel made a direct recommendation to Coppedge that only two candidates were prepared for the position and should be selected for a second interview.

selected Ms. Burk for the position and referred her selection to her supervisor and the FAA Administrator for review and approval. *Id.* at 16. In March 2014, both the FAA Administrator and Coppedge's supervisor approved Ms. Burk for the Deputy Director position. *Id.*

DISCUSSION

Plaintiff may establish a violation of Title VII "either by direct evidence of discrimination . . . or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [] (1973)." *Conroy v. Vilsack*, 707 F.3d 1163, 1171 (10th Cir. 2013). The parties agree that the *McDonnell Douglas* framework governs in this matter, as Plaintiff does not produce direct evidence of racial discrimination. *See* Def.'s Mot. at 19; Pl.'s Resp. at 24. Under the *McDonnell Douglas* rubric,

> the plaintiff must first establish a prima facie case of discrimination . . . . Then, the defendant may come forward with a legitimate, non-discriminatory . . . rationale for the adverse employment action. If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual.

*Conroy*, 707 F.3d at 1171 (internal quotation marks omitted) (citing *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011)).

I. *Whether Plaintiff Has Established a Prima Facie Case of Discrimination*

To establish a prima facie case of a failure-to-promote claim, Plaintiff must demonstrate that: "(1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled." *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). Establishing the prima facia case "creates a presumption that the employer unlawfully

5

discriminated against the employee." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1223 (10th Cir. 2003) (internal quotation marks omitted) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

Defendant does not contest, for purposes of her Motion, that Plaintiff has satisfied her burden of establishing a prima facie case. *See* Def.'s Reply at 1. As such, the burden shifts to Defendant to demonstrate a "legitimate, nondiscriminatory reason" for the FAA's employment action. *Conroy*, 707 F.3d at 1171 (citation and internal quotation marks omitted).

## II. Whether Defendant Has Shown a Legitimate and Nondiscriminatory Reason for Not Promoting Plaintiff

At step two of the *McDonnell Douglas* framework, Defendant must articulate a legitimate, nondiscriminatory rationale for the adverse employment action and produce evidence in support thereof. *Burdine*, 450 U.S. at 254. At this stage, Defendant is required only to "explain [the FAA's] actions against the plaintiff in terms that are not facially prohibited by Title VII." *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 (10th Cir. 1992). She need not persuade the Court "that [the FAA] was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254.

Defendant submits that the FAA selected Ms. Burk for the Deputy Director's position because she was the most qualified candidate. *See* Def.'s Mot. at 21-25. To satisfy her burden of production, Defendant first cites the Rating Panel's score sheet reflecting the overall score of the applicants based upon their satisfaction of the position's requirements. *See id.* at 23 (citing Doc. No. 37-6). This score sheet identifies Ms. Burk as the applicant

who received the highest overall score from the Ratings Panel. *See* Doc. No. 37-6 at 1. Defendant next submits testimony from members of the Interview Panel describing their reasons for identifying Ms. Burk as a top candidate for the Deputy Director position. *See* Def.'s Mot. at 23-24 (citing Doc. Nos. 37-7, 37-8, 37-9). Finally, Defendant quotes Coppedge's written selection rationale, which includes the following statement:

> Ms. Burk is a good fit based on her past experience and knowledge. A cross-functional panel representing NextGen, PMO and Finance all participated in the interviews. We have confidence that [Burk] is the right candidate for this position and can be successful in moving forward the mission and requirements of the Aeronautical Center and FAA.
>
> Ms. Burk is an achievement-oriented leader with experience in Logistics, Acquisition, Financial Management, Legal, Regulatory, Environmental, and IT. She is considered an expert on continuous improvement and streamlining processes due to her extensive experience and strong leadership. She has a solid command presence and has a great combination of domestic and international experience as well as experience working National Defense Program (NDP) projects in coordination with the FAA for the past several years. Ms. Burk is currently responsible for a multi-functional team of military, government civilian and contract personnel providing services to customers (FAA, MDA, NOA, and other Services) in fee-for-service partnerships.

*Id.* at 25 (internal quotation marks omitted) (quoting Doc. No. 37-1 at 12).

Plaintiff does not dispute that Defendant has met her burden under step two of the *McDonnell Douglas* framework. *See* Pl.'s Resp. at 30. Because Defendant's explanation is not "facially prohibited by Title VII," the Court concludes that Defendant has satisfied her burden of articulating a legitimate, nondiscriminatory reason for the FAA's decision not to promote Plaintiff to the Deputy Director position. *Flasher*, 986 F.2d at 1317.

7

### III. *Whether Defendant's Rationale Was Pretextual*

At the third step of the *McDonnell Douglass* framework, Plaintiff is required to "meet [the] ultimate burden of persuading the court by demonstrating the proffered reason is not the true reason." *McCowan*, 273 F.3d at 922. Plaintiff may do this "either directly by showing a discriminatory reason more likely motivated the employer or indirectly by challenging the employer's reason as unworthy of credence." *Id.* (footnote omitted). Here, Plaintiff does not counter Defendant's articulated nondiscriminatory reason with facts that would a more likely, racially-motivated basis for the failure to promote. Thus, the matter turns on whether Plaintiff has successfully demonstrated that Defendant's rationale may reasonably be found to be not the true basis for the failure to promote. *See Jones*, 349 F.3d at 1266.

Though there is "no one specific mode of evidence required" to prove pretext, *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir. 2008), pretext can generally be established by showing that "the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief," *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1038-39 (alteration and internal quotation marks omitted) (quoting *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010)). An inference of pretext may also be drawn where there is "an overwhelming merit disparity" between the plaintiff and the chosen candidate, *Santana v. City & Cty. of Denver*, 488 F.3d 860, 865 (10th Cir. 2007) (citation and internal quotation marks omitted), or where the plaintiff's assertions of pretext are supported by "disturbing procedural irregularities, including deviations from normal

8

company procedure," *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1138 n.11 (10th Cir. 2003) (internal quotation marks omitted) (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1219-20 (10th Cir. 2002)).

To demonstrate a triable dispute over whether Defendant's rationale is pretextual, Plaintiff argues that (1) Plaintiff was better qualified for the position than Ms. Burk; (2) Coppedge had a history of discriminatory behavior; and (3) the selection process exhibited procedural irregularities, including (a) Coppedge's selection of the Interview Panel, (b) Coppedge's imposition of a factually inaccurate interview question, and (c) Coppedge's failure to interview Plaintiff despite Plaintiff's completion of the FAA's Senior Leadership Development Program ("SLDP"). *See* Pl.'s Resp. at 31-33.

  a. <u>First Theory of Pretext: Plaintiff Was Better Qualified for the Position</u>

Plaintiff first argues that she was better qualified for the position than Ms. Burk. Plaintiff points to her experience in leadership positions at the FAA, beginning in 1996 and including a six-month tenure as Acting Deputy Director. *Id.* at 31. Plaintiff adds that she was "the most senior of . . . Coppedge's executives" and that she possessed "a broad background of knowledge and experience in headquarters and in the field," as well as experience "in the areas of technical and management training, international training, financial management, logistics and inventory management, and project management." *Id.* In addition to outlining her own work experience, Plaintiff asserts that Ms. Burk "lacked the experience necessary to competently serve as Deputy Director" and that this is evidenced by the fact that Ms. Burk was reassigned from the position within a year of her appointment. *Id.* at 32.

9

While there is no dispute that Plaintiff was qualified for the Deputy Director position, Plaintiff's assertion of a significant disparity between her and Ms. Burk's qualifications is unavailing. Plaintiff does not point to any specific area of expertise required for the Deputy Director position in which Ms. Burk was lacking. Nor does Plaintiff contest the findings of the Ratings Panel, which included that Ms. Burk's qualifications and experience corresponded to the Deputy Director position requirements better than any other applicant's. Indeed, the job posting's delineation of duties included: "oversight for the corporate operational, resource, and logistical issues associated with managing the . . . campus site." Doc. No. 37-4 at 1. These duties corresponded with Ms. Burk's experience in "Logistics, Acquisition, Financial Management, Legal, Regulatory, Environmental, and IT" and her "combination of domestic and [i]nternational experience as well as experience working [on] National Defense Program . . . projects in coordination with the FAA." Doc. No. 37-1 at 6.

The fact that Ms. Burk had not previously been employed by the FAA does not, as Plaintiff suggests, so overshadow her other qualifications as to produce the type of "overwhelming merit disparity" that might raise genuine doubt about the FAA's motivation for hiring her. *Santana*, 488 F.3d at 865 (citation and internal quotation marks omitted). Plaintiff cannot show pretext by merely "identifying minor differences between [P]laintiff's qualifications and those of successful applicants." *Id.* (internal quotation marks omitted) (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1319 (10th Cir. 1999)).

Ms. Burk's ultimate reassignment from the position is likewise insufficient to establish pretext, as Plaintiff must do more than show that the FAA "got [the employment decision] wrong"; she must instead "come forward with evidence that the employer didn't really believe its proffered reason[] for [its] action." *Johnson*, 594 F.3d at 1211. The Court agrees with Defendant that Plaintiff has failed to make this showing.

Accordingly, the Court finds that Plaintiff has failed to show that the difference between her qualifications and those of Ms. Burk were so significant as to discredit Defendant's proffered rationale that it found Ms. Burk to be more qualified. Plaintiff has not, in this regard, established pretext.

b. Second Theory of Pretext: Coppedge Had a History of Discriminatory Behavior

Plaintiff next argues that Defendant's legitimate, nondiscriminatory rationale is pretextual because Coppedge had "a history of discriminatory behavior, including harassing her subordinates." Pl.'s Resp. at 32. In support of this argument, Plaintiff cites the affidavits of Stanley Sieg and Deloris Martin. *See id.* (citing Doc. Nos. 41-4, 41-5). The former describes Mr. Sieg's receipt of complaints from employees working for Coppedge regarding her management style and their fear of retaliation and requests for transfers. Doc. No. 41-4 at 1. The latter describes an incident in which an executive working under Coppedge's direct supervision voluntarily resigned because Coppedge was "difficult to work with and had subjected the executive to a hostile work environment." Doc. No. 41-5 at 2-3.

Evidence of a decision maker's general bias against a protected class may, in some circumstances, "support an inference that the decision maker[] [was] influenced by the bias" in making an adverse employment decision. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1144 (10th Cir. 2009). But Plaintiff does not contend—and the cited affidavit testimony does not reflect—that the individuals Coppedge allegedly subjected to hostile or other disparate treatment were members of a protected class. Because Plaintiff fails to show that Coppedge's past managerial conduct reflects a general bias toward any specific protected class, this evidence cannot serve to support an inference that Coppedge's selection of Ms. Burk over Plaintiff was influenced, as she alleges, by racial bias. Accordingly, this argument does not support Plaintiff's contention of pretext.

c. <u>Third Theory of Pretext: The Selection Process Contained Procedural Irregularities</u>

Plaintiff's third line of argument focuses on alleged procedural irregularities in the five-step selection process. *See* Pl.'s Resp. at 31-32. The Tenth Circuit has recognized that "disturbing procedural irregularities, including deviations from normal company procedure, provide support for a plaintiff's assertion of pretext." *Doebele*, 342 F.3d at 1138 n.11 (internal quotation marks omitted) (quoting *Garrett*, 305 F.3d at 1219-20). To establish pretext based upon a procedural irregularity, Plaintiff must "identify an applicable written or unwritten policy or procedure that [Defendant] failed to follow." *Cooper v. Wal-Mart Stores, Inc.*, 296 F. App'x 686, 695 (10th Cir. 2008). Further, "there must be some evidence that the irregularity 'directly and uniquely disadvantaged a minority employee.'"

*Johnson*, 594 F.3d at 1213 (citing *Randle v. City of Aurora*, 69 F.3d 441, 454 n.20 (10th Cir. 1995)).

Plaintiff marshals three examples of alleged procedural irregularities. First, Plaintiff contends that when selecting the executives to serve on the Interview Panel, Coppedge intentionally omitted an executive from the "one-third . . . of the Aeronautical Center services . . . under Plaintiff's leadership and oversight." Pl.'s Resp. at 15-16, 29. But Plaintiff does not identify any policy or procedure mandating that the Interview Panel include an executive from that group or be composed of executives from some array of backgrounds. *See Cooper*, 296 F. App'x at 695; *see also* Doc. No. 37-5 at 3 (FAA policy stipulating that "[i]ndividuals serving on executive rating or interview panels may be career or noncareer executives and may be employed by the FAA or another federal agency"). For this reason, her argument fails.

Second, Plaintiff argues that Coppedge imposed a factually inaccurate interview question regarding the MMAC's budget. *See* Pl.'s Resp. at 22-23. Here again Plaintiff fails to point to a policy that was violated. *See Cooper*, 296 F. App'x at 695. And there is no basis for concluding that the alleged error "directly and uniquely disadvantaged [Plaintiff]," since the Interview Panel asked each candidate the same question. *Johnson*, 594 F.3d at 1213 (citation omitted). Accordingly, Plaintiff has failed to show a procedural irregularity based upon the allegedly inaccurate interview question.[4]

---

[4] Plaintiff also suggests that Coppedge's "participation in the selection of the panel members," "assist[ance] with the selection of questions for candidates," and "selection as to who would receive the final interview and the position" create an inference of pretext because of the "subjective aspect of the process." Pl.'s Resp. at 32. Plaintiff fails to point

13

Finally, Plaintiff asserts that Coppedge's decision not to interview Plaintiff despite Plaintiff's completion of the SLDP illustrates a procedural irregularity sufficient to give rise to an inference of pretext. *See* Pl.'s Resp. at 31. Plaintiff points to the FAA's Human Resources Policy Manual, Policy Bulletin No. 64, titled "Executive System Interviews and Selection Approval," which stipulates that

> SLDP graduates who are evaluated by an executive panel and rated among the best qualified will be referred to the selecting official and will be given the opportunity to interview for the position. The best qualified determination will be made by an executive panel based upon evaluation of the written application package submitted in response to an FAA executive vacancy announcement.

Doc. No. 37-5 at 3.

Defendant does not dispute that Plaintiff is an SLDP graduate but argues that Plaintiff was not entitled to the benefits under the policy. Defendant cites the affidavit of Kimberly Brooks, the current FAA Director of Executive Resources in the Office of Human Resources Management, who testified that "[o]nce a SLDP graduate reaches the executive level, the SLDP program no longer provides them any additional benefit," and that Plaintiff was "not entitled to a guaranteed interview under the [policy]" because she "was already an executive when she applied for the Deputy Director position." Def.'s Mot. at 33 (citing

---

to any authority supporting this proposition. And while the presence of subjective decision-making can, in some circumstances, create an inference of discrimination, courts "typically infer pretext in these contexts only when the criteria on which the employers ultimately rely are *entirely subjective* in nature." *Jones*, 349 F.3d at 1267-68 (emphasis added). The Tenth Circuit has found that where, as here, "each applicant answered the same questions, and the interviewers ranked the applicants' responses using predetermined criteria," the selection criteria were not excessively subjective. *Turner*, 563 F.3d at 1145; *accord Santana*, 488 F.3d at 866.

Doc. No. 37-5). In response, Plaintiff offers the conflicting testimony of Deloris Martin, an individual who served as an FAA Human Resources Specialist during the times relevant to this lawsuit. Ms. Martin testified that the benefits provided to SLDP graduates under the policy do not "terminate[] or expire[] once [the] graduate reache[s] an executive-level position." Doc. No. 41-5 at 2. Defendant submits that the Court should disregard Ms. Martin's testimony because it would be inadmissible in evidence. *See* Def.'s Reply at 5-7, 10.

The Court need not address these issues, as Plaintiff's argument fails even if the Court assumes Plaintiff was entitled to an interview with Coppedge under the policy. The failure to interview Plaintiff is not, in this instance, sufficient to establish an inference of pretext.[5] The Tenth Circuit has explained,

> The mere fact that an employer failed to follow its own internal *procedures* does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual. *Ingels* [*v. Thiokol Corp.*, 42 F.3d 616, 623 (10th Cir. 1994)] ("To the extent there is any inconsistency at all in following the employer's internal procedures, it only goes to *process*

---

[5] Insofar as Plaintiff frames her argument in terms of Coppedge's "failure to recognize Plaintiff's benefits" under the policy, Pl.'s Resp. at 23, the Court notes that the policy does not dictate that the selecting official is responsible for identifying the SLDP graduates but only that she interview those referred to her. *See* Doc. No. 37-5 at 3. Plaintiff attempts to place responsibility on Coppedge by pointing to a memorandum from a human resources specialist that advises Coppedge that she must interview all SLDP graduates. *See* Pl.'s Resp. at 23, 28. This argument is unavailing. The human resources specialist also stated in the memorandum that "[a]ny such [SLDP] candidates are identified on [an attached] certificate," Doc. No. 41-19 at 1, and as Plaintiff concedes the accompanying certificate fails to identify her as an SLDP graduate. *See* Pl.'s Resp. at 15; Doc. No. 41-19 at 5. In the absence of evidence that Plaintiff was referred to Coppedge as an SLDP graduate, Plaintiff has not shown that Coppedge was responsible for a procedural irregularity.

15

and not to purpose or motivation, and could not provide a sufficient basis for a jury to find pretext for [racial] discrimination.").

*Randle*, 69 F.3d at 454 (alteration omitted); *accord Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007). The summary judgment record reflects the FAA's attempt to follow the cited policy. *See* Doc. No. 41-19 at 1 (memorandum from human resources specialist advising Coppedge that she must interview SLDP graduates listed "on [an attached] certificate"); *id*. at 5 (certificate not listing Plaintiff as required interviewee). This record, even considering the affidavit testimony of Ms. Martin, reflects at most a mistaken understanding of the policy or error in its application and not that any such mistake or error was insincere or otherwise pretextual. *See Randle*, 69 F.3d at 455 ("[T]he City offered evidence that it believed that it was following its own internal procedures, and thus, even if the failure to announce [the] position was a mistake, it was not pretextual. That is, just because the reasoning relied upon for a certain action is mistaken does not mean that the reason is pretextual."); *Berry*, 490 F.3d at 1222 ("Because it is uncontroverted that T-Mobile decisionmakers did not believe a rigid policy existed, 'even if the failure to [follow procedure] was a mistake, it was not pretextual.'").

In sum, Plaintiff's assertions of procedural irregularities do not illustrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reason[] for [the adverse employment] action that a reasonable factfinder could rationally find [it] unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted). Accordingly, the Court finds

that these assertions do not present a triable dispute over whether Defendant's rationale is pretextual.

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact that Defendant's proffered reason for the FAA's failure to promote Plaintiff is pretext for discrimination. Thus, Plaintiff has failed to satisfy her burden under the third step of the *McDonnell Douglas* framework.

Accordingly, the Court concludes that Defendant's Motion for Summary Judgment (Doc. No. 37) should be and hereby is GRANTED.

ENTERED this 8th day of January, 2019.

*Charles B. Goodwin*
CHARLES B. GOODWIN
United States District Judge